UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States District Court
Southern District of Texas
FILED
JAN 25 2018
David J. Bradley, Clerk of Court

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| v. | § | CRIMINAL NO. 18-44 |
| | § | (under seal) |
| TIFFANY SOURJOHN, | § | |
| Defendant. | | |

**INFORMATION**

The United States Attorney Charges:

**Sealed**
Public and unofficial staff access to this instrument are prohibited by court order.

**COUNT ONE**
(Conspiracy to Commit Wire Fraud and Wrongfully Use Government Seals – 18 U.S.C. § 371)

A.  **INTRODUCTION**

At all times relevant to this Information :

1.  TIFFANY SOURJOHN ("SOURJOHN") was a resident of Miami, Oklahoma.

2.  Bank was a company headquartered in Winston-Salem, North Carolina, that wholly owned a federally insured financial institution.

3.  Co-conspirator #1 ("CC1") was a co-conspirator of SOURJOHN residing in an unknown location who pretended to be an employee of Bank.

4.  Co-conspirator #2 ("CC2") was a co-conspirator of SOURJOHN residing in an unknown location who pretended to be, and used the identity, of a real executive of Bank.

5.  SOURJOHN posed as a representative and employee of Bank. At no point was either SOURJOHN, CC1, or CC2 a representative or agent of Bank.

1

B.  **THE CONSPIRACY**

6.  Beginning in or about November 2015 until in or about August 2016, in the Houston Division of the Southern District of Texas and elsewhere, the defendant,

**TIFFANY SOURJOHN**

knowingly and willfully conspired with persons known and unknown to the United States Attorney, including CC1 and CC2, to commit and to aid and abet the commission of the following offenses against the United States:

a. Wire fraud, that is, knowingly, willfully, and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce writings, signs, signals, picture and sounds for the purpose of executing such scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1343.

b. To fraudulently and wrongfully affix and impress the seal of a department and agency of the United States, to and upon a certificate, instrument, commission, document, and paper, in violation of Title 18, United States Code, Section 1017.

C.  **THE OBJECT OF THE CONSPIRACY**

7.  It was an object of the conspiracy that the co-conspirators would unlawfully enrich themselves by entering into bogus investment agreements and creating fraudulent documents bearing government seals to deceive victims into making payments the victims

otherwise would not have made had they known the fraudulent nature of the agreements and documents.

**D.     THE MANNER AND MEANS OF THE CONSPIRACY**

8.      The manner and means by which the co-conspirators sought to accomplish the objects of the conspiracy included, among other things, the following:

a.      Co-conspirators would send phishing emails to potential victims around the world informing them about investment opportunities with Bank in which the victim would supposedly invest funds on behalf of Bank, when in truth and in fact none of the co-conspirators had any legitimate or authorized relationship with Bank.

b.      Co-conspirators would inform potential victims who were interested in the investment opportunity that a Bank "representative" would visit them in the country where they lived to officially sign and ratify the investment agreement, when in truth and in fact the supposed representative traveling to meet them had no employment relationship with Bank.

c.      Co-conspirators would convince victims to purchase first-class airline tickets and pay for business hotel accommodations for the supposed Bank representatives to travel from the United States to their country, by creating the false impression that such expenses were required to effectuate the investment agreement with Bank.

d.      Co-conspirators would convince victims that the U.S. government was sponsoring the bogus investment opportunity and that, as evidence of this sponsorship, the U.S. embassy would supposedly notarize and ratify the investment agreement, when in truth and in fact neither the U.S. government nor any U.S. embassy or consulate was sponsoring the investment opportunity with Bank.

  e. Co-conspirators would convince victims that the U.S. embassy or consulate charged a $7,500 notarization fee, when in truth and in fact no U.S. embassy or consulate charged such a fee.

  f. Co-conspirators, such as SOURJOHN, posing as representatives of Bank, after receiving $7,500 in cash from victims, would enter the U.S. embassy or consulate and wait in the consular affairs section on the false pretense that the U.S. government employees there were notarizing the agreement.

  g. With SOURJOHN's assistance and knowledge, co-conspirators would then send to victims fraudulent receipts that purported to be issued, and fraudulent agreements that purported to be notarized, by U.S. embassies or consulates.

  h. After the purported representatives of Bank visited the embassies, co-conspirators would then make additional requests of victims that they pay various up-front fees before the investment funding could be released, which caused victims to make interstate wire transfer payments to bank accounts in, among other places, the Southern District of Texas.

  i. Co-conspirators would continue to fabricate additional reasons why more payments were needed before the investment funding could supposedly be released, until a victim gave up and ceased communicating with the co-conspirators.

  j. Co-conspirators at no point provided victims the investment funding promised.

### E.  ACTS IN FURTHERANCE OF THE CONSPIRACY

9. In furtherance of the conspiracy, and to effect the objects thereof, the defendant and other persons known and unknown to the United States Attorney performed, caused the


performance of, and aided and abetted the performed of the following acts, among others, in the Southern District of Texas and elsewhere:

(1)     On or about December 20, 2015, co-conspirators emailed SOURJOHN and a co-conspirator a fraudulent receipt in the amount of $7,500, supposedly issued by the U.S. Consulate General in Seoul, Korea, which wrongfully and fraudulently bore the seal of the U.S. Department of State, and which SOURJOHN knew was to be used to deceive a victim into believing that $7,500 had actually been given to the U.S. Embassy in Seoul.

(2)     On or about December 21, 2015, SOURJOHN and a co-conspirator received $7,500 from a victim in Seoul, South Korea and visited the U.S. Embassy in Seoul while pretending that a supposed investment agreement between Bank and the victim would be notarized in the Embassy and that the $7,500 was the fee for the notarization, when in reality SOURJOHN and the co-conspirator kept the money for themselves.

(3)     On or about January 7, 2016, as a result of SOURJOHN and the co-conspirator's sham visit to the U.S. Embassy and induced by further misrepresentations of co-conspirators, the victim and his business associates made a $50,000 international wire transfer from South Korea to a Bank of America account ending in 3244 in the Southern District of Texas.

All in violation of Title 18, United States Code, Section 371.


APPROVED:
RYAN K. PATRICK
United States Attorney

By:  *[signature]*
Suzanne Elmilady
Assistant United States Attorney
(713) 567-9500


SANDRA MOSER
Acting Chief
Fraud Section, Criminal Division
U.S. Department of Justice

By:  *[signature]* William Johnston by S.E.
William Johnston
Trial Attorney
(202) 514-0687

6